**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS Filed 9-11-01
AUSTIN DIVISION

Clerk, U. S. District Court
Western District of Texas
By
Deputy

| | |
|---|---|
| CROSSROADS SYSTEMS (TEXAS), INC., a Texas corporation, | CASE NO.  A 00-CA-217 SS |
| Plaintiff, | |
| v. | |
| CHAPARRAL NETWORK STORAGE, INC., a Delaware corporation, | |
| Defendant. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSSROADS' MOTION FOR JUDGMENT AS A MATTER OF LAW ON INFRINGEMENT, INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS, CONTRIBUTORY INFRINGEMENT, INDUCING INFRINGEMENT, WILLFUL INFRINGEMENT AND CHAPARRAL'S DEFENSES OF ANTICIPATION, OBVIOUSNESS, INDEFINITENESS AND INEQUITABLE CONDUCT**

## I.      INTRODUCTION

Plaintiff Crossroads Systems, Inc. ("Crossroads") is entitled to judgment as a matter of

law on the following:  (1) Chaparral literally infringed all claims of the '972 patent; (2)

Chaparral infringed all claims of the '972 patent under the doctrine of equivalents; (3) Chaparral

contributorily infringed claims 7-14 of the '972 patent; (4) Chaparral induced the infringement of

claims 7-14 of the '972 patent; (5) Chaparral willfully infringed all claims of the '972 patent; (6)

the '972 patent is not anticipated; (7) the '972 patent is not obvious; (8) the '972 patent is not

indefinite; and (9) Crossroads did not commit inequitable conduct.  There is no legally sufficient

evidentiary basis to rule in Chaparral's favor on any of these issues.  Accordingly, judgment as a

matter of law is appropriate.

## II.   CROSSROADS IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.

### A.   The standard for judgment as a matter of law entitles Crossroads to prevail on this motion.

Judgment as a matter of law ("JMOL") against a party is proper with respect to a "claim or defense" if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue" under the controlling law. Fed. R. Civ. P. 50(a)(1); *Buchanan v. City of San Antonio*, 85 F.3d 196, 198 (5th Cir. 1996).   This standard is similar to the standard for granting summary judgment. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 140 (2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986) (noting the summary judgment standard "mirrors" the standard for JMOL, such that "the inquiry under each is the same")).   While the Court must view the evidence in the light most favorable to the nonmoving party when evaluating a motion for JMOL, *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994), it can also consider "'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves*, 530 U.S. at 150 (internal citation omitted).   The Court's decision to grant a JMOL "'is not a matter of discretion, but a conclusion of law based upon a finding that there is insufficient evidence to create a fact question for the jury.'" *Conkling*, 18 F.3d at 1300-01 (internal citation omitted) (affirming grant of JMOL on breach of contract claim).

### B.   Crossroads is entitled to judgment as a matter of law on its literal infringement claim.

"JMOL in favor of a party is properly granted in the context of literal infringement if no reasonable jury could determine that every limitation recited in the properly construed claim is not, or is, found in the accused device . . . ." *Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 974 (Fed. Cir. 1999).   Crossroads presented the expert testimony of Dr. Paul Hodges to

unequivocally demonstrate that the accused products contain all of the claim limitations found in the '972 patent's 14 claims. (*See* Sept. 6, 2001 Trial Tr., at 90-103.) Chaparral has failed to introduce any evidence contradicting Dr. Hodges' conclusions of literal infringement. All of Chaparral's products, modified or unmodified, are capable of literally infringing the '972 patent. As shipped, each and every accused product, whether modified or unmodified, infringes the '972 patent because all of those products are capable of infringing in at least one mode of operation. Dr. Stephens' trial testimony confirmed this fact. Accordingly, no reasonable jury could conclude that Chaparral does not literally infringe all claims of the '972 patent and the Court should find that Chaparral literally infringed all fourteen claims of the '972 patent as a matter of law.

**C.      Crossroads is entitled to judgment as a matter of law on its infringement by equivalents claim.**

"A patent may be infringed under the doctrine of equivalents by manufacture, use, or sale of subject matter equivalent to that literally claimed. Infringement under the doctrine 'requires proof of insubstantial differences between the claimed and accused products or processes.'" *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1555 (Fed. Cir. 1997) (citing *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1521-22 (Fed. Cir. 1995)). Put another way, the alleged infringing product must perform substantially the same function, in substantially the same way, to achieve the same result as the claimed invention. *See Warner-Jenkinson Co., Inc. v. Hilton Davis, Chemical Co., Inc.*, 520 U.S. 17, 40 (1997).

Crossroads introduced uncontroverted evidence in the form of expert testimony and documents that Chaparral's use of its LUN Zoning feature on the accused products to provide access controls results in Chaparral's infringement of the '972 patent under the doctrine of equivalents. Dr. Hodges testified that the accused products of Chaparral are insubstantially

different than the claims of the '972 patent because Chaparral's LUN Zoning feature, even as modified, is substantially similar and performs the same function in the same way as the claim limitation of access controls. Chaparral's use of CAPI or pass-through commands to allegedly avoid infringement is nothing more than fraud on the patent because the CAPI and pass-through commands do not actually lower security when the devices are used for their intended purposes. *See Graver Tank & Mfg. Co. v. Linde Air Prods., Co.*, 339 U.S. 605, 608 (1950); *EMI Group N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 896 (Fed. Cir. 1998) ("[T]he doctrine of equivalents is invoked to prevent a 'fraud on the patent,' when an accused infringer is 'stealing the benefit of the invention' by making insubstantial changes that avoid the literal scope of the claims.") (quoting *Graver Tank*); *YBM Magnex, Inc. v. Int'l Trade Comm'n*, 145 F.3d 1317, 1322 (Fed. Cir. 1998) (noting the "judicial responsibility to avoid a 'fraud on the patent' based on insubstantial changes from the patented invention."); *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1093 (Fed. Cir. 1998) ("The purpose of the doctrine of equivalents is to prevent a form of fraud . . . . Its purpose is to protect inventors from those who would take the invention and by insubstantial change avoid the letter of the claims."); *Data Race, Inc. v. Lucent Tech., Inc.*, 73 F. Supp. 2d 698, 740 (W.D. Tex. 1999) ("The doctrine of equivalents exists in order to prevent infringers from stealing the heart of an invention but escaping liability by making minor or insubstantial changes to the literal language of the claims.").

Chaparral failed to rebut any of Crossroads' evidence that Chaparral infringed all claims of the '972 patent under the doctrine of equivalents. No reasonable jury could find non-infringement of the '972 patent under the doctrine of equivalents and judgment as a matter of law in Crossroads' favor is appropriate.

**D.    As a matter of law, Chaparral is liable for the contributory infringement and inducing infringement of claims 7-14 of the '972 patent.**

Crossroads alleges that Chaparral is liable for the contributory infringement and inducing the infringement of claims 7 through 14 of the '972 patent.  Claims 7 through 10 of the '972 patent set forth "[a] storage network" comprising several components, including workstations, SCSI storage devices and a storage router interfacing between the Fibre Channel transport medium and the SCSI bus transport medium.  Claims 11 through 14 are method claims.

### 1.    Contributory Infringement

> Whoever offers to sell or sells within the United States or imports into the united States a component of a patented machine . . . or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c).

Crossroads introduced uncontroverted evidence that the accused products of Chaparral can be used for no purpose other than providing the interconnectivity (between SCSI and Fibre Channel) on a storage network discussed in claims 7 through 10.  (*See* Sept. 6, 2001 Trial Tr. at 97-100, 102; *see also* P-220, P-225, P-227, P-230 and P-232.)  Logically, the accused products of Chaparral have no non-infringing purposes as they cannot function without a storage network; i.e., one would not purchase and use the accused products for use by themselves (or for use anywhere other than in a storage network), they would need to be used in a storage network. (*See id.*)

### 2.    Induced Infringement

"A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement." *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,

911 F.2d 670, 675 (Fed. Cir. 1990) (emphasis in original). The level of knowledge or intent is "actual intent to cause the acts which constitute the infringement." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990).

Crossroads presented irrefutable evidence that Chaparral sold the accused products to third parties. (*See* Trial Exs. P-33, P-75, P-77, P-78.) Chaparral knew these third parties would use the accused products in an infringing manner. (*See* Trial Ex. P-12, at CNS 33597, P-24 at CNS 45933, 45945, P-104 at CNS 574; *see also* Trial Ex. P-118-124; *see also* P-200, P-225 at chapter 4, P-227 at chapter 4, P-230 at chapter 7 and P-232 at chapter 7.) Accordingly, the Court must hold as a matter of law that Chaparral induced the infringement of claims 7 through 10 of the '972 patent.

### E.   Crossroads is entitled to judgment as a matter of law on its willful infringement claim.

"To establish willful infringement, a plaintiff must prove by clear and convincing evidence that the defendant acted without a reasonable belief that its action avoided infringement." *Crystal Semiconductor Corp. v. Tritech Microelectronics International, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001). The mere fact that a party obtains an opinion of counsel will not necessarily insulate the party from a finding of willful infringement. In order to defend against a claim of willfulness, an opinion of counsel must be thorough, competent, objective and independent such that the accused infringer's reliance thereon is reasonable. *SRI International, Inc. v. Advanced Technology Laboratories, Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Minnesota Mining and Manufacturing Co. v. Johnson & Johnson Orthopedics, Inc.*, 976 F.2d 1559, 1580-81 (Fed. Cir. 1992). The failure to obtain an opinion of counsel is an important factor weighing in favor of a finding of willfulness. *Kloster Speedsteel AB v. Crucible Inc.*, 793 F.2d 1565, 1579 (Fed. Cir. 1986); *Critikon, Inc. v. Becton Dickinson*

It is undisputed that upon learning of the '972 patent, Chaparral recognized that its LUN Zoning feature possibly infringed the '972 patent. Chaparral's current Chief Technology Officer Robert Selinger testified to this end. (9/5/01 Trial testimony at 13:42:3025-13:43:2017.) Shortly after Crossroads sued Chaparral for infringement of the '972 patent, Chaparral halted the planned introduction of the LUN Zoning feature into its products because it realized its products infringed or at least possibly infringed the '972 patent. (Id. at 15:42:4522-15:42:3321.) Beginning in January 2001, Chaparral began shipping accused products with LUN Zoning. (P-33) Chaparral never obtained advice of counsel relating to LUN Zoning prior to or subsequent to the commencement of shipment of its products with LUN Zoning. (Id. at 15:45:5114-15:47:2610 and 15:47:5520-15:49:1410.) In fact, Chaparral hid the fact that it planned to introduce LUN Zoning and the fact that it actually did introduce LUN Zoning from its attorney Mr. Zinger. Chaparral's justification for its decision to commence shipping products with LUN Zoning is limited to the following:

> And we decided that we're already sued, we don't have the feature, we're going to add the feature. We'll still be in the same situation.
>
> Crossroads sued us, we believe -- they believe we were infringing the patent. So by adding, yet, another feature to it, we didn't see that that put us in any different situation than we already were in with Crossroads.

(9/5/01 Trial testimony at 16:03:2118-3523.) In other words, Chaparral's sole justification for including LUN Zoning in its products was its belief that nothing else could happen to it because it had already been sued.

For the reasons set forth above, Chaparral did not act in good faith when it began shipping products with LUN Zoning. As a matter of law, a finding of willful infringement is appropriate.

### F.   Crossroads is entitled to judgment as a matter of law that the '972 patent is not anticipated.

Although Chaparral alleged the '972 patent was anticipated by certain prior art, Chaparral failed to prove its case. The Federal Circuit requires that a party seeking to invalidate a patent under 35 U.S.C. § 102 must show that the allegedly invalidating prior art contains "each and every element of [the] claimed invention." *Union Oil Co. of California v. Atlantic Richfield Co.*, 208 F.3d 989, 994-95 (Fed. Cir. 2000) (*citing Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987)). Invalidity by anticipation requires that the "four corners of a single, prior art document, describe every element of the claimed invention." *Advanced Display Systems, Inc. v. Kent State University*, 212 F.3d 1272, 1282 (Fed. Cir. 2000.) The law imposes a high burden on a defendant because patents are presumed valid. *Union Oil*, 208 F.3d at 995.

Chaparral has failed to introduce any single prior art reference that contains all of the claims of the '972 patent. Specifically, Chaparral introduced no evidence that any of the prior art references contain the "access control" limitation set forth in all of the claims of the '972 patent, as that claim limitation was construed in the Court's *Markman* Order and the further claim construction set forth in the Court's May 14, 2001 Order denying Pathlight summary judgment. Likewise, Chaparral failed to introduce any evidence that any of the prior art references contain the "virtual local storage" limitation set for in all of the claims of the '972 patent. Therefore, because none of the prior art references introduced by Chaparral contain *all* of the '972 claim limitations, no reasonable jury could find the '972 patent anticipated. Judgment as a matter of law in Crossroads' favor is thus appropriate.

### 1.   Adaptec Coronado

As a matter of law, the Adaptec Coronado product cannot anticipate any claim of the '972 patent. First, Chaparral introduced no evidence establishing conception of a Coronado product with the capability to perform the reserve command prior to the date of Crossroads' conception of the invention embodied by the '972 patent. Second, the Court previously ruled in the *Pathlight* case, as a matter of law, that reserve management did not meet the access control claim limitation of the '972 patent. The reasons set forth in that order, as further discussed by Dr. Hodges during his testimony at this trial, preclude a finding that reserve management equals access controls. Third, Chaparral introduced no evidence of any virtual local storage in the Coronado product. Fourth, Mr. Zinger stated emphatically in his opinion letter (P-32 at 18-19) and during trial that reserve management does equal access controls. Finally, Chaparral, in verified answers to interrogatories, takes the position that reserve management does not meet the access control claim limitation of the '972 patent. (Exhibit A and B.)

### 2.   The '771 Patent

As a matter of law, the '771 patent cannot anticipate claims 1-4 and 7-14 of the '972 patent. First Chaparral presented no evidence that the '771 patent constitutes prior art. Second, Crossroads presented clear and convincing evidence that it conceived the '972 patent prior to the filing date of the '771 patent and then Crossroads showed reasonable diligence in reducing to practice. Third, Chaparral failed to introduce sufficient evidence establishing that the '771 patent contained the following elements: mapping, access control, virtual local storage, native low level block protocols and multiplicity of storage devices.

### G.   Crossroads is entitled to judgment as a matter of law that the '972 patent is not obvious.

"In a challenge based on obviousness under 35 U.S.C. § 103, the person alleging

invalidity must show prior art references which alone or combined with other references would have rendered the invention obvious to one of ordinary skill in the art at the time of invention." *Al-Site Corp. v. VSI International, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999).  The law of obviousness was set out by the U.S Supreme Court in *Graham v. John Deere Co.*, 383 U.S. 1 (1966).  Under *Graham*, Obviousness is to be determined by an analysis of:  (1) scope and content of the prior art; (2) the differences between the prior art and the claims at issue; and (3) the level of ordinary skill in the pertinent art involved.  Secondary considerations such as commercial success, long felt but unresolved needs and the failure of others must be considered if present.  *Hybritech, Inc. v. Monoconal Antibodies, Inc.*, 802 F.2d 1367, 1380 (Fed. Cir. 1986).  If obviousness is alleged over several prior art references, there must be some motivation, suggestion or teaching to combine the references.  *In re Kotzab*, 217 F.3d 1365, 1369-1370 (Fed. Cir. 2000).

As discussed above, Chaparral failed to introduce any prior art reference containing or even suggesting "access controls" and/or "virtual local storage" as those terms were defined by the Court.  In addition, the '771 patent lacked mapping and a multiplicity of storage devices. Therefore, Chaparral's three combinations (Coronado and SCC LUN Mapping, Coronado and '771 patent and '771 patent and 1996 Crossroads COMDEX unit) cannot render the '972 patent obvious because elements of the '972 patent are missing from these combinations.  In addition, Chaparral failed to introduce any evidence showing any motivation, suggestion or teaching to combine multiple references.  Chaparral's expert ignored clear evidence of commercial success (i.e., $15,000,000 license agreement with Pathlight).  Based on this lack of evidence, no reasonable jury could conclude that the '972 patent is obvious and judgment as a matter of law in Crossroads' favor is appropriate.

**H.    Crossroads is entitled to judgment as a matter of law that the '972 patent is not indefinite.**

Whether a claim is invalid for indefiniteness requires a determination of whether the claims at issue apprise one of ordinary skill in the art of their scope, or whether the bounds of the claims are so indeterminable as to be indefinite. *Orkokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1564, 1576 (Fed. Cir. 1986); *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000).

Chaparral has introduced no evidence, nor even suggested that any of the claims of the '972 patent are indefinite.  The word "indefinite" was not raised by Chaparral's technical expert nor any other witness in this case.  Chaparral failed to introduce any evidence that one of ordinary skill in the art would be unable to determine the '972 patent's scope.  No reasonable jury could find the claims of the '972 patent indefinite based on the complete lack of evidence introduced by Chaparral.  Accordingly, judgment as a matter of law in Crossroads' favor is appropriate.

**I.    Crossroads is entitled to judgment as a matter of law that it did not commit inequitable conduct.**

Chaparral alleges the '972 patent is unenforceable because Crossroads committed inequitable conduct at the Patent and Trademark Office.  However, Chaparral failed to introduce evidence sufficient for a reasonable jury to find inequitable conduct.

"It is inequitable conduct to withhold material information from a patent examiner or to submit false material information with the intent to deceive or mislead the examiner into granting a patent." *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001).  "Inequitable conduct due to failure to disclose material information must be proven by clear and convincing evidence of:  (1) prior art that was material; (2) knowledge chargeable to an applicant of that prior art and its materiality; and (3) failure of the applicant to disclose the art

resulting from an intent to mislead the PTO." *Elk Corp. of Dallas v. GAF Building Materials Corp.*, 168 F.3d 28, 30 (Fed. Cir. 1999). Information is "material" where there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1179 (Fed. Cir. 1995).

Chaparral failed to introduce any evidence that any of the pieces of prior art allegedly giving rise to inequitable conduct were material. Crossroads introduced the testimony of Geoff Hoese, Jeff Russell and Keith Arroyo to confirm that the Comdex unit neither had access controls nor "reserve/release." Chaparral introduced no evidence contradicting this fact. Likewise, Mr. Hoese and Mr. Russell confirmed that the units allegedly, but not actually, sold to third parties in 1996 did not even exist during the relevant time frame, nor did this product contain all of the elements of the '972 patent. The inventors did not even conceive access controls until March 1997. Crossroads also introduced unrebutted testimony that the HP MUX did not have any type of access controls throughout all of 1996. With respect to any alleged prior art of any other third party, Chaparral failed to introduce any evidence that either of the inventors were was aware of these products. *See Elk Corp.*, 168 F.3d at 30. Moreover, no third party product had access controls or virtual local storage. Chaparral has completely failed to introduce or solicit any evidence that Crossroads intended to deceive the PTO. Moreover, Brian Smith had no duty to disclose prior art to the PTO because he was in no way involved with the '972 patent application. As a matter of law, a finding of inequitable conduct based on Mr. Smith's actions or inactions is inappropriate.

No reasonable jury could conclude that Chaparral committed inequitable conduct and judgment as a matter of law in favor of Crossroads is appropriate.

## III.    CONCLUSION

For the reasons set forth above Crossroads respectfully requests the Court grant this motion.

Respectfully submitted,

Dated:  September _10_, 2001          By: _____

JOHN ALLCOCK (Cal. Bar No. 098895)
ALAN D. ALBRIGHT (TX State Bar No. 00973650)
JOHN E. GIUST (Cal. Bar No. 196337)
MATTHEW C. BERNSTEIN (Cal. Bar. No. 199240)
**GRAY CARY WARE & FREIDENRICH LLP**
1221 South MoPac Expressway
Suite 400
Austin, TX  78746-6875
Tel: 512-457-7000
Fax: 512-457-7001

Attorneys for Plaintiff
Crossroads Systems (Texas), Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was hand delivered to opposing counsel on this 11th day of September, 2001.

David D. Bahler, Esq.
Michael C. Barrett, Esq.
Mark T. Garrett, Esq.
FULLBRIGHT & JAWORSKI, L.L.P.
1900 One American Center
600 Congress Avenue
Austin, TX  78701-3248

Matthew C. Bernstein

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

CROSSROADS SYSTEMS, (TEXAS),
INC., a Texas Corporation,

      Plaintiff/Counter-Defendant,

   v.

CHAPARRAL NETWORK STORAGE, INC.
a Delaware corporation,

      Defendant/Counter-Plaintiff.

CIVIL ACTION NO. A-00CA-217-SS

DEMAND FOR JURY TRIAL

## DEFENDANT CHAPARRAL'S ORIGINAL ANSWERS TO PLAINTIFF
## CROSSROADS' SECOND SET OF INTERROGATORIES (6-14)

### RESPONSES 6-13 ARE ATTORNEY'S EYES ONLY

To:  Plaintiff CROSSROADS SYSTEMS, (TEXAS) INC., by and through its attorneys of record, Alan D Albright, Esq.; THOMPSON & KNIGHT L.L.P.; 98 San Jacinto Blvd., Suite 1200; Austin, TX 78701-4081 and John Allcock, Esq.; Alexander Rogers, Esq.; John Giust, Esq.; GRAY CARY WARE & FREIDENRICH LLP; 401 B Street, Suite 1700; San Diego, CA 92101-4297

    Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Chaparral Network Storage, Inc. (hereinafter "Chaparral") serves these Answers to Plaintiff's Second Set of Interrogatories in writing and under oath.

PLAINTIFF'S
EXHIBIT
168
PENGAD-Bayonne, N.J.

**INTERROGATORY NO. 14**

Separately, for each Bridge or Router known to You, state: (a) the identity by company model name and designation of such Bridge or Router, (b) whether or not You will Contend that such Bridge or Router is prior art to the asserted U.S. Patent, 5,941,972, (c) whether or not You will Contend that any implementation, variation, execution or carrying out of any SCSI commands known as "reserve" and/or "release" (including all variations, standards and specification, including "persistent" reserve and/or release), either alone, together, or in conjunction with other SCSI commands (including all versions, standards and specifications thereof) by such Bridge or Router does or does not meet the claim term "implement access controls" (or "implements access controls") as construed previously by the Court in this action with respect to asserted U.S. Patent No. 5,941,971, and (d) explain in detail all reasons why the implementation, variation, execution or carrying out of such command(s) by such Bridge or Router does or does not meet such claim term as the claim term has been construed. In answering this Interrogatory, account for all initiator/target modes of operation which such Bridge or Router is capable of performing.

**RESPONSE TO INTERROGATORY NO. 14**

(a)    The identity by company model name and designation of such Bridge or Router:

Chaparral objects to this interrogatory as premature. Discovery is still on-going, and Chaparral reserves the right to update this response with additional information as it becomes available pursuant to sources that include, for example, outstanding third-party subpoenas for documents and depositions. In addition, Chaparral reserves the right to provide additional information concerning the company model name or designation of the devices listed below, as additional information regarding the same becomes available or is further analyzed.

Subject to the general and specific objections, and as presently advised, Chaparral responds as follows:

------------------------------------------------------------------------------------------------

| Adaptec: | (1) | AEC-7312A |
|----------|-----|-----------|
|          | (2) | AEC-7312B |
|          | (3) | AEC-7412B |

|   | (4) | AEC-7413B |
|---|---|---|
|   | (5) | AEC-7313A daughter board with Adaptec Brooklyn RAID controller |
|   | (6) | Bridge Phase II |
|   | (7) | Coronado Fibre Channel-to-SCSI Bridge |
|   | (8) | Coronado Fibre Channel-to-SCSI Intelligent RAID Controller |

| ADIC: | (1) | VBAR Fibre Channel Router |
|---|---|---|

| Ancor: | (1) | FCS 266/1062 FibreLink |
|---|---|---|

| Ancot: | (1) | FSB 8000 Bridge |
|---|---|---|
|   | (2) | FSB 8001/8010 Fibre Channel to SCSI Bridge |

| ATTO Technology, Inc.: | (1) | ATTO FibreBridge |
|---|---|---|
|   | (2) | Fibre Channel to SCSI Converter |

| Compaq Computer Corporation: | (1) | 4100, known internally within Crossroads as "Shiner", customized and manufactured by Crossroads |
|---|---|---|

| Computer Network Technology Corporation: | (1) | Ultranet Storage Director |
|---|---|---|
|   | (2) | Ultranet Storage Multiplexer |
|   | (3) | Ultranet Storage Gateway |
|   | (4) | Zeus |

| Digital Equipment Corporation (now Compaq): | (1) | DIGITAL StorageWorks Fibre Channel RAID Array 7000 |
|---|---|---|

| Hewlett-Packard Company: | (1) | HP Fibre Channel SCSI Multiplexer |
|---|---|---|

| IBM: | (1) | Sequent FC/SCSI Bridge |
|---|---|---|
|   | (2) | Sequent NUMA-Q |

| Infinity CommStor & Crossroads Systems, Inc.: | (1) | CrossPoint 4100 and any prototypes thereof |
|---|---|---|
|   | (2) | Infinity CommStor's Fibre Channel to SCSI Protocol Bridge |
|   | (3) | CrossPoint 4400 and any prototypes thereof |

| I/O Solutions: | (1) | I/O Bridge |
|---|---|---|

| LSI Logic Corporation: | (1) | RAID Controller 3701 |
|---|---|---|
|   | (2) | RAID Controller 3702 |

| Storage Concepts: | (1) | Concept 910 FibreRAID |
| | (2) | DCRsi DTE140 |
| | (3) | DCRsi DTE 280 |
| | (4) | FibreRAID 814 |

| SUN Microsystems, Inc.: | (1) | SUN SPARCstorage Array |

| Vicom Systems, Inc.: | (1) | SLIC-T |
| | (2) | SLIC Model # 1355 |
| | (3) | SLIC Model # 7355 |
| | (4) | SLIC Model # 1355-2 |
| | (5) | SLIC Model # 1355-2S |
| | (6) | SLIC Model # PC1355-2S |
| | (7) | SLIC Model # PC1355-1S |
| | (8) | Ultralink 1000-SUS |
| | (9) | Ultralink 1000-SUD |
| | (10) | Ultralink PC1000H-SUD |
| | (11) | Ultralink PC1000-SUS |
| | (12) | Ultralink R1000 |
| | (13) | Ultralink 1000-SFD |
| | (14) | Ultralink 1000-SFS |

| Western Digital Corporation: | (1) | FibrePort 2000 |
| | (2) | FibrePort lite |

(b)     Whether or not You will Contend that such Bridge or Router is prior art to the asserted U.S. Patent, 5,941,972:

Subject to the general and specific objections, and as presently advised, Chaparral responds as follows:

Chaparral may contend that any product meeting applicable criteria of 35 U.S.C. § 102 constitutes prior art to the '972 patent. In particular, it may contend that any product known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before December 31, 1997 constitutes prior art. Additionally, it may contend that any product in public use, sold, or offered for sale prior to December 31, 1996 constitutes prior art. It may also contend that a product made in this country prior to December 31, 1997 (and not abandoned, suppressed, or concealed) constitutes prior art.

Chaparral notes that the invention date of the '972 patent remains December 31, 1997, which is the filing date of the application that matured into the '972 patent. Despite numerous targeted requests, Crossroads has provided no documents to suggest that the invention date should be otherwise.

Chaparral contends that each product identified above in (a) is prior art to the '972 patent.

(c)     Whether or not You will Contend that any implementation, variation, execution or carrying out of any SCSI commands known as "reserve" and/or "release" (including all variations, standards and specification, including "persistent" reserve and/or release), either alone, together, or in conjunction with other SCSI commands (including all versions, standards and specifications thereof) by such Bridge or Router does or does not meet the claim term "implement access controls" (or "implements access controls") as construed previously by the Court in this action with respect to asserted U.S. Patent No. 5,941,971,

Chaparral objects to this interrogatory as being premature because discovery is still on-going; Chaparral reserves the right to update this response as additional information becomes available concerning how the products listed in (a) handle reserve and/or release commands.

Subject to the general and specific objections, and as presently advised, Chaparral responds as follows:

Under Chaparral's interpretation the reserve/release commands do not meet the claim term "implement(s) access controls" as construed by the Court. This includes variations of the reserve/release commands such as persistent reserve/release. However, if it is found that the reserve/release commands do meet the claim term, Chaparral contends that the patent-in-suit is invalid in view of the prior art.

(d)     Explain in detail all reasons why the implementation, variation, execution or carrying out of such command(s) by such Bridge or Router does or does not meet such claim term as the claim term has been construed.

Subject to the general and specific objections, and as presently advised, Chaparral responds as follows:

Chaparral believes that reserve/release commands do not meet the claim term because it appears that the Court's construction requires the router to "provide controls which limit a computer's access." Under Chaparral's interpretation, however, it is the Fibre Channel host that provides controls to limit a computer's access by issuing the reserve/release commands. However, if it is found that the reserve/release commands do meet the claim term, Chaparral contends that the patent-in-suit is invalid in view of the prior art.

************

Chaparral reserves the right to modify and supplement these responses as more information becomes available during the course of this litigation, and nothing in this response shall be construed as an acquiescence or waiver of any future arguments. In particular, Chaparral anticipates that it may supplement this response after receiving further discovery from Crossroads and third parties.

DATED: 5 January 2001

Objections by,

By _____

Pike Powers, Esq. (SBN 16224000)
David D. Bahler, Esq. (SBN 01513100)
Mark T. Garrett (SBN 24007225)
Michael C. Barrett, Esq. (SBN 24006803)
FULBRIGHT & JAWORSKI .L.L.P.
1900 One American Center
600 Congress Avenue
Austin, TX 78701-3248
Telephone: (512) 418-3000


ATTORNEYS FOR
DEFENDANT/COUNTER-PLAINTIFF

# VERIFICATION

I, Harris Ravine, Executive Counsel for Chaparral Network Storage, Inc., hereby state that:

(a) Chaparral's Original Answers (and Objections) to Plaintiff Crossroad's Second Set of Interrogatories (6-14) were prepared with the assistance of employees and representatives of Chaparral, upon which I relied;

(b) the answers set forth herein, subject to inadvertent or undiscovered errors, are based on, and therefore necessarily limited by, the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers;

(c) consequently Chaparral reserves the right to make any changes in the answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and

(d) subject to the limitations set forth herein, Chaparral's Answers and Objections to Plaintiff Crossroad's Second Set Of Interrogatories (6-14) are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 5 January 2001,          By:         _Chaparral Network Storage_

                                     Signed by:  _Harris Ravine_

                                     Position:   _Executive Counsel_

## AFFIDAVIT PURSUANT TO LOCAL RULE CV-33

I, Mark T. Garrett, counsel for Chaparral, affirm that, as provided for by Local Rule CV-33, properly executed responses to the foregoing interrogatories will be served on the counsel listed in the Certificate of Service within twenty (20) days of 5 January 2001.

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of January 2001, copies of the foregoing **DEFENDANT CHAPARRAL'S ORIGINAL ANSWERS TO PLAINTIFF CROSSROADS' SECOND SET OF INTERROGATORIES (6-14)** was served on all counsel of record, as indicated below:

Alan D. Albright, Esq.                         **VIA First Class Mail and Facsimile**
THOMPSON & KNIGHT, L.L.P.
98 San Jacinto Blvd., Suite 1200
Austin, Texas 78701-4081


John Allcock, Esq.                             **VIA First Class Mail and Facsimile**
Alexander Rogers, Esq.
John Giust, Esq.
GRAY CARY WARE
& FREIDENRICH, L.L.P.
401 B Street, Suite 1700
San Diego, CA 92101-1048

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| CROSSROADS SYSTEMS, (TEXAS), INC., a Texas Corporation, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> CHAPARRAL NETWORK STORAGE, INC a Delaware corporation, <br><br> Defendant/Counter-Plaintiff. | CIVIL ACTION NO. A-00CA-217-SS <br><br> DEMAND FOR JURY TRIAL |

### DEFENDANT CHAPARRAL'S SUPPLEMENTAL ANSWERS TO PLAINTIFF CROSSROADS' INTERROGATORIES NOS. 1-5, 14

To: Plaintiff CROSSROADS SYSTEMS, (TEXAS) INC , by and through its attorneys of record, Alan D Albright, Esq.; GRAY CARY WARE & FREIDENRICH, L.L.P., 1221 South MoPac Expressway, Suite 400, Austin, Texas 78746-6875 and John Allcock, Esq.; John Giust, Esq.; and Matthew Bernstein, Esq , GRAY CARY WARE & FREIDENRICH LLP; 401 B Street, Suite 1700; San Diego, CA 92101-4297

PLAINTIFF'S
EXHIBIT
171
PENGAD-Bayonne, N. J.

Crossroads at Comdex 1996, the offer for sale by Crossroads in 1996 of the 4100 and/or 4400 product, the offer for sale in 1996 by Hewlett Packard of the HP Fibre Channel to SCSI Multiplier (MUX) device, technology from TD Systems, including the TD Systems Omniserve User Guide, Ancot's FSB-8000/8001 Fibre Channel to SCSI bridge, and Sequent's FC/SCSI bridge.

None of these items was disclosed to the Patent Office by Crossroads. On information and belief, during prosecution of the '972 patent, the named inventors and/or other individuals associated with the filing or prosecution of the '972 patent knew of (at least) the Adaptec Coronado Product, the device shown by Crossroads at Comdex 1996, an offer for sale by Crossroads in 1996 of the 4100 and/or 4400 product, and the offer for sale in 1996 by Hewlett Packard of the HP Fibre Channel to SCSI Multiplier (MUX) device  And, on information and belief, despite knowledge of this material prior art, the named inventors and/or individuals associated with the filing or prosecution of the '972 patent failed to disclose this material prior art to the United States Patent and Trademark Office during prosecution of the '972 patent, with the intent to deceive the United States Patent and Trademark Office.

**INTERROGATORY NO. 14**

Separately, for each Bridge or Router known to You, state: (a) the identity by company model name and designation of such Bridge or Router, (b) whether or not You will Contend that such Bridge or Router is prior art to the asserted U.S. Patent, 5,941,972, (c) whether or not You will Contend that any implementation, variation, execution or carrying out of any SCSI commands known as "RESERVE" and/or "RELEASE" (including all variations, standards and specification, including "persistent" RESERVE and/or RELEASE), either alone, together, or in conjunction with other SCSI commands (including all versions, standards and specifications thereof) by such Bridge or Router does or does not meet the claim term "implement access controls" (or "implements access controls") as construed previously by the Court in this action with respect to asserted U.S. Patent No. 5,941,971, and (d) explain in detail all reasons why the implementation, variation, execution or carrying out of such command(s) by such Bridge or Router does or does not meet such claim term as the claim term has been construed.  In answering this Interrogatory, account for all initiator/target modes of operation which such Bridge or Router is capable of performing.

**RESPONSE TO INTERROGATORY NO. 14**

Subject to general objections, and as presently advised, Chaparral supplements its response as follows:

Chaparral incorporates by reference the Expert Report of Gary Stephens, the Rebuttal Report of Gary Stephens, Pathlight's Motion for Summary Judgment of Invalidity (including attachments) and Pathlight's Reply to Crossroads' Opposition (including attachments)

(a)    The identity by company model name and designation of such Bridge or Router:

-----------------------------------------------------------------------------------------------------------

| Digital Equipment Corporation (now Compaq) | (1) | DIGITAL StorageWorks HSx72 |

-----------------------------------------------------------------------------------------------------------

| TD Systems | (1) | Ominserve 3 |

-----------------------------------------------------------------------------------------------------------

(b)    Whether or not You will Contend that such Bridge or Router is prior art to the asserted U.S. Patent, 5,941,972

Chaparral contends that each product identified above in (a) is prior art to the '972 patent.

(c)    Whether or not You will Contend that any implementation, variation, execution or carrying out of any SCSI commands known as "RESERVE" and/or "RELEASE" (including all variations, standards and specification, including "persistent" RESERVE and/or RELEASE), either alone, together, or in conjunction with other SCSI commands (including all versions, standards and specifications thereof) by such Bridge or Router does or does not meet the claim term "implement access controls" (or "implements access controls") as construed previously by the Court in this action with respect to asserted U.S. Patent No. 5,941,971,

Under Chaparral's interpretation the RESERVE/RELEASE commands may not meet the claim term "access controls" as construed by the Court. This includes variations of the RESERVE/RELEASE commands such as persistent RESERVE/RELEASE. However, if it is found that the RESERVE/RELEASE commands do meet this claim term, Chaparral contends that the patent-in-suit is invalid in view of the prior art as discussed in response to Interrogatory Nos. 2 and 3.

(d)    Explain in detail all reasons why the implementation, variation, execution or carrying out of such command(s) by such Bridge or Router does or does not meet such claim term as the claim term has been construed.

Chaparral believes that the management of RESERVE/RELEASE commands may not constitute "access controls" because the Court's construction requires that

1.    "Access controls" do not provide partial access; and
2.    "Access controls" may not be managed by each individual workstation.

The RESERVE/RELEASE commands, on the other hand, may provide partial access and allow individual workstations to manage access.

However, if the RESERVE/RELEASE commands are encompassed by the definition of "access controls," Chaparral contends that the patent-in-suit is invalid in view of prior art that implemented the RESERVE command (*e.g.*, by keeping track of RESERVE commands in a table) so as to effect access between Fibre Channel workstations and SCSI storage devices.

DATED:  July 17, 2001                          Respectfully Submitted,

                                               By  Michael C. Barrett
                                                   David D. Bahler, Esq. (SBN 01513100)
                                                   Mark T. Garrett (SBN 24007225)
                                                   Michael C. Barrett, Esq. (SBN 24006803)
                                                   FULBRIGHT & JAWORSKI .L.L.P.
                                                   1900 One American Center
                                                   600 Congress Avenue
                                                   Austin, TX 78701-3248
                                                   Telephone: (512) 418-3000
                                                   ATTORNEYS FOR DEFENDANT

Received 07/17/2001 17:1⎵ , 00:52 on line [3] for MB01963 printed 07⎵ ⎵01 17:20 * Pg 2/2
SENT BY: CHAPARRAL NETWORK STORAGE;        3038453652;        JUL-17-01  4:26PM;        PAGE 2/2

## VERIFICATION

I, _Victor M. Perez_____ (name), _President & CEO_ (position) for Chaparral Network Storage, Inc., hereby state that:

(a) DEFENDANT CHAPARRAL'S SUPPLEMENTAL ANSWERS TO PLAINTIFF CROSSROADS' INTERROGATORIES NOS. 1-5, 14 were prepared with the assistance of employees and representatives of Chaparral, upon which I relied;

(b) the answers set forth herein, subject to inadvertent or undiscovered errors, are based on, and therefore necessarily limited by, the records and information still in existence, presently recollected and thus far discovered in the course of the preparation of these answers;

(c) consequently Chaparral reserves the right to make any changes in the answers if it appears at any time that omissions or errors have been made therein or that more accurate information is available; and

(d) subject to the limitations set forth herein, DEFENDANT CHAPARRAL'S SUPPLEMENTAL ANSWERS TO PLAINTIFF CROSSROADS' INTERROGATORIES NOS. 1-5, 14 are true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 17 July 2001,

By: _____

Signed by: _Victor M. Perez_____

Position: _President & CEO_____

## CERTIFICATE OF SERVICE

I hereby certify that on the _17th_ day of July 2001, copies of the foregoing **DEFENDANT CHAPARRAL'S SUPPLEMENTAL ANSWERS TO PLAINTIFF CROSSROADS' INTERROGATORIES NOS. 1-5, 14** was served on all counsel of record, as indicated below:


Alan D Albright, Esq.                    **FIRST CLASS MAIL AND E-MAIL**
GRAY CARY WARE
& FREIDENRICH, L L.P.
1221 s. Mopac Expressway, Suite 400
Austin, Texas 78746-6875


John Allcock, Esq.                       **FEDERAL EXPRESS AND E-MAIL**
John Giust, Esq.
Matthew Bernstein, Esq.
GRAY CARY WARE
& FREIDENRICH, L.L.P.
401 B Street, Suite 1700
San Diego, CA 92101-1048


_Stephe Lane_