IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION

FILED

SEP 2 6 2001

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

CROSSROADS SYSTEMS, (TEXAS),
INC.,

        Plaintiff/Counter-Defendant,

  v.

CHAPARRAL NETWORK STORAGE, INC.,

        Defendant/Counter-Plaintiff.

CIVIL ACTION NO. A-00CA-217-SS

**CHAPARRAL'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW
TRIAL UNDER RULES 50(b) AND 59**



**ORIGINAL**

## Table of Contents

I.    INTRODUCTION..................................................................................................... 1

II.   ARGUMENT ........................................................................................................... 3

    A.    The '972 Patent Is Invalid in View of the Prior Art ................................. 3

         1.    Adaptec's Coronado Product Anticipates the Claims................... 4

         2.    The '771 Patent Anticipates Claims 1-4 and 7-14 ....................... 5

         3.    The Prior Art Renders Claims Obvious ........................................ 7

              a.    Adaptec + SCC LUN Mapping Renders the Claims Obvious....................................................................... 7

              b.    The '771 Patent + Crossroads' Prior Art Renders Claims 5-6 Obvious ........................................................ 8

              c.    Adaptec + the '771 Patent Renders the Claims Obvious................. 8

    B.    The '972 Patent Is Unenforceable Because Crossroads Committed Inequitable Conduct ........................................................................................ 9

         1.    Legal Standard for Inequitable Conduct ....................................... 9

         2.    Crossroads Had a Duty to Disclose Information Relating to the Public Use and Offer for Sale of the Crossroads 4100 Prototype.......................... 10

         3.    Crossroads Had a Duty to Disclose Information Relating to the Offer for Sale of the Hewlett Packard Mux ................................. 12

         4.    Crossroads Had a Duty to Disclose Information Relating to the Adaptec "4200 Look-Alike" Product.......................................... 13

    C.    No Rational Jury Could Find That Chaparral's Products Infringe Any of the Claims of the '972 Patent Literally or under the Doctrine of Equivalents ............. 14

         1.    Crossroads Has Presented No Evidence That the Accused Devices "Implement Access Controls" as Required by Claims 1-14 ....................... 16

         2.    Crossroads Has Not Shown Direct Infringement of Claims 7-14 Because There Is No Evidence That Chaparral Made or Sold Workstations or SCSI Storage Devices ............................................... 19

         3.    Crossroads Has Not Shown Contributory or Inducement of Infringement of Claims 1-14................................................... 20

    D.    No Rational Jury Could Find Chaparral Willfully Infringed the '972 Patent......... 20

III.  CONCLUSION...................................................................................................... 22

**Table of Authorities**

## CASES

*Arthur A. Collins, Inc. v. Northern Telecom Ltd.*,
  216 F.3d 1042 (Fed. Cir. 2000) ........................................................................... 18

*Brady v. Fort Bend County*,
  145 F.3d 691 (5th Cir. 1998) ............................................................................... 2

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*,
  246 F.3d 1368 (Fed. Cir. 2001) ...................................................................... 5, 22

*C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  911 F.2d 670 (Fed. Cir. 1990) ............................................................................ 18

*Coleman v. Dines*,
  754 F.2d 353 (Fed. Cir. 1985) .......................................................................... 6, 7

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
  120 F.3d 1253, (Fed. Cir. 1997) ......................................................................... 12

*Data Race, Inc. v. Lucent Techs., Inc.*,
  73 F. Supp. 2d 698 (W.D. Tex. 1999) ................................................................... 7

*Delta-X v. Baker Hughes Prod. Tools*,
  984 F.2d 410, 414 (Fed. Cir. 1993) ..................................................................... 24

*Dolly, Inc. v. Spalding & Evenflo Co.*,
  16 F.3d 394 (Fed. Cir. 1994) .............................................................................. 16

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  849 F.2d 1430, 1440 (Fed. Cir. 1988) ................................................................. 24

*Elk Corp. of Dallas v. GAF Building Materials Corp.*,
  168 F.3d 28 (Fed. Cir. 1999) .............................................................................. 11

*Ex Parte Andersen*,
  212 U.S.P.Q. 100 (Bd. Pat. App. & Interf. 1981) ................................................ 9

*Eyre v. McDonough Power Equipment, Inc.*,
  775 F.2d 416 (5th Cir. 1985) ............................................................................... 3

*Ganguly v. Sunagawa*,
  5 U.S.P.Q.2d 1970 (Bd. Pat. Interf. 1987) ........................................................... 7

*Gould v. Schawlow*,
  363 F.2d 908, (C.C.P.A. 1966) ............................................................................. 8

*Hazeltine Research v. Brenner*,
  382 U.S. 252 (1965) ............................................................................................. 8

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*,
  62 F.3d 1512 (Fed. Cir. 1995) ............................................................................ 19

*Hunter v. Weissbarth*,
  230 U.S.P.Q. 365 (Bd. Pat. App. 1986) ............................................................. 8

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*,
  177 F.3d 968 (Fed. Cir. 1999)............................................................................ 19

*Kridl v. McCormick*,
  105 F.3d 1446 (Fed. Cir. 1997).......................................................................6, 7

*Laitram Corp. v. Rexnord, Inc.*,
  939 F.2d 1533 (Fed. Cir. 1991).......................................................................... 17

*Lantech, Inc. v. Keip Mach. Co.*,
  32 F.3d 542 (Fed. Cir. 1994).............................................................................. 17

*Lewmar Marine, Inc. v. Barient, Inc.*,
  827 F.2d 744 (Fed. Cir. 1987)............................................................................. 9

*Li Second Family Ltd. Partnership v. Toshiba Corp.*,
  231 F.3d 1373 (Fed. Cir. 2000).......................................................................... 11

*Litton Sys., Inc. v. Honeywell, Inc.*,
  140 F.3d 1449 (Fed. Cir. 1998).......................................................................... 17

*London v. MAC Corp. of Am.*,
  44 F.3d 316 (5th Cir. 1995) ................................................................................ 1

*Mendenhall v. Cedarrapids, Inc.*,
  5 F.3d 1557 (Fed. Cir. 1993)............................................................................... 17

*Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*,
  803 F.2d 684 (Fed. Cir. 1986)............................................................................ 23

*Molins PLC v. Textron, Inc.*,
  48 F.3d 1172 (Fed. Cir. 1995)............................................................................ 11

*Mycogen Plant Science, Inc. v. Monsanto Co.*,
  243 F.3d 1316 (Fed. Cir. 2001)........................................................................... 9

*Naber v. Cricchi*,
  567 F.2d 382 (C.C.P.A. 1977) ............................................................................ 7

*Nickson Indus. v. Rol Mfg. Co.*,
  847 F.2d 795, 800 (Fed. Cir. 1988)..................................................................... 24

*Normand v. Research Inst. of Am.*,
  927 F.2d 857 (5th Cir. 1991) .............................................................................. 1

*Ortho Pharm. Corp. v. Smith*,
  959 F.2d 936, 944 (Fed. Cir. 1992)................................................................23, 24

*Pagan v. Shoney's, Inc.*,
  931 F.2d 334 (5th Cir. 1991) .............................................................................. 3

*Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*,
  803 F.2d 1170 (Fed. Cir. 1986)........................................................................... 18

*Ryco, Inc. v. Ag-Bag Corp.*,
    857 F.2d 1418, 1428 (Fed. Cir. 1988)......................................................................... 23

*Semiconductor Energy Lab Co. v. Samsung Electronics Co.*,
    204 F.3d 1368 (Fed. Cir. 2000)......................................................................... 11, 12

*Serrano v. Tellular Corp.*,
    111 F.3d 1578 (Fed. Cir. 1997)............................................................................. 18

*Smith v. Transworld Drilling Co.*,
    773 F.2d 610 (5th Cir. 1985) ................................................................................. 3

*Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*,
    859 F.2d 878 (Fed. Cir. 1988)........................................................................... 6, 22

*Thomson, S.A. v. Quixote Corp.*,
    166 F.3d 1172 (Fed. Cir. 1999).............................................................................. 4

*Verdegaal Bros., Inc. v. Union Oil Co.*,
    814 F.2d 628 (Fed. Cir. 1987)............................................................................... 5

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997)........................................................................................ 18, 19

*Wolverine World Wide, Inc. v. Nike, Inc.*,
    38 F.3d 1192 (Fed. Cir. 1994).............................................................................. 17

## STATUTES

35 U.S.C. § 102................................................................................................... 4

35 U.S.C. § 102 (g)............................................................................................. 4

## RULES

37 C.F.R. § 1.56(a)............................................................................................. 9

FED. R. CIV. P. 50(b).......................................................................................... 1, 3

FED. R. CIV. P. 59(a).......................................................................................... 2, 3

Pursuant to Rule 50 (b) of the Federal Rules of Civil Procedure (F.R.C.P.), Defendant Chaparral Network Systems, Inc. ("Chaparral") respectfully renews its request that the Court enter an order that U.S. Patent 5,941,972 ("the '972 patent") of Plaintiff Crossroads System, Inc. (Texas) ("Crossroads") is invalid, unenforceable, not infringed, and/or not willfully infringed by Chaparral as a matter of law. Alternatively, Chaparral respectfully requests a new trial regarding the issues of validity, enforceability, infringement, and/or willful infringement of the '972 patent under F.R.C.P. 59.

## I.    INTRODUCTION

Chaparral's motion under F.R.C.P. 50(b) for a judgment of invalidity, unenforceability, noninfringement, and no willful infringement as a matter of law should be granted because the facts and inferences point so strongly in favor of Chaparral that a rational jury, after considering the evidence presented and viewing all reasonable inferences in the light most favorable to Crossroads, could not find the '972 patent valid, enforceable, infringed, or willfully infringed. *See London v. MAC Corp. of Am.*, 44 F.3d 316, 318 (5th Cir. 1995); *Normand v. Research Inst. of Am.,* 927 F.2d 857, 859 (5th Cir. 1991).

Even with the facts and inferences viewed in Crossroads' favor, Chaparral provided clear and convincing evidence that the patent is invalid because (1) prior art that implements access controls anticipates the claims of the '972 patent, and (2) prior art renders the claimed invention obvious. Accordingly, no rational jury could find the '972 patent is valid. Moreover, Chaparral proved by clear and convincing evidence that Crossroads committed inequitable conduct by withholding material information from the Patent Office. Judgment under Rule 50 in favor of Chaparral is appropriate to remove the issues of validity and unenforceability of the '972 patent

from consideration by the jury. Moreover, Crossroads' evidence of infringement, both literal and under the doctrine of equivalents, is insufficient to support a finding of infringement of *any* claim of the '972 patent. Crossroads also has not proven that Chaparral acted unreasonably in acting the way it did, and thus, did not willfully infringe the '972 patent. No rational jury could find that Chaparral's products, both original and modified products,[1] infringe literally or under the doctrine of equivalents the '972 patent. No rational jury could additionally find that Chaparral willfully infringed Crossroads' patent. In addition to supporting a judgment as a matter of law of invalidity, unenforceability, noninfringement, and no willful infringement of the '972 patent, these grounds also support the granting of a new trial on these issues under Rule 59.

Under Rule 59, this Court may grant Chaparral a new trial "on all or part of the issues ... in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted .... FED. R. CIV. P. 59(a). A new trial has been granted for evidentiary reasons when the court is convinced that "the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary conclusion." *Brady v. Fort Bend County*, 145 F.3d 691, 713 (5th Cir. 1998) (quotation marks and brackets removed) (quoting *Pagan v. Shoney's, Inc.*, 931 F.2d 334, 337 (5th Cir. 1991)). A court may also order a new trial if the verdict is against the weight of the evidence, the trial was unfair, or prejudicial error was committed in its course. *See e.g., Smith v. Transworld Drilling Co.*, 773 F.2d 610 (5th Cir. 1985); *Eyre v. McDonough Power Equipment*,

---

[1] Crossroads has accused the following products of infringement: A8526, G7324, G7313, K7413, K7313, G8324, FS1220, and FS2620. Each of these products includes two distinct modes of operation—a mode allowing individual workstations to manage access (Mode A) and a second mode in which this ability is disabled over the Fibre Channel (Mode B). These are the "original products". Effective August 2, 2001, Chaparral modified its FS1220, FS2620, and A8526 products so that their only mode of operation is to allow each individual workstations to manage its own access. Effective August 31, 2001, Chaparral modified its accused G7324 and G8324 products in the same way. The FS1220 and FS2620 products after August 2, and the G7324 and G8324 after August 31 are the "modified products."

*Inc.*, 775 F.2d 416, 420, 421 (5th Cir. 1985). In fact, in this case, the verdicts of validity, enforceability, infringement, and willful infringement were against the weight—even the great weight—of the evidence, as shown below.

In considering a motion under Rule 59, unlike under Rule 50, a court need not review the evidence in the light most favorable to the nonmoving party. *Smith*, 773 F.2d at 613. Furthermore, if a trial judge is "not satisfied with the verdict of a jury, he has the right—indeed the duty—to set the verdict aside and order a new trial." *Id.* For each of these reasons, Chaparral should be granted a new trial on the issues of validity, unenforceability, infringement, and willful infringement of the '972 patent.[2]

Chaparral sets forth, in further detail below, the grounds to support the granting of its motion under Rule 50 (b) as a matter of law or under Rule 59 for a new trial on some or all of the issues. All of these grounds are valid despite any testimony or evidence offered by Crossroads, which is legally and factually insufficient.

## II.   ARGUMENT

### A.   The '972 Patent Is Invalid in View of the Prior Art

By statute, a patent is required to be novel and non-obvious. 35 U.S.C. §§ 102, 103. If the claims of a patent do not satisfy at least those criteria, they are invalid. No rational jury could have determined that the art offered by Chaparral did not constitute proper prior art and that the claims of the '972 patent satisfied at least these criteria of patentability in view of that prior art.

---

[2] For simplicity, in the remainder of this motion Chaparral argues its ground for a new trial under the similar standard for granting a motion under Rule 50(b) ("no rational jury could arrive" at a particular verdict); however, Chaparral also urges that the arguments presented to support its motion under Rule 50(b) also support the grant of a new trial under any of the other standards for which a new trial has been granted, specifically including those standards articulated above.

### 1.   Adaptec's Coronado Product Anticipates the Claims

An invention must be novel over the prior art. 35 U.S.C. § 102. Claim 1-14 of the '972

patent are not novel because a product called Coronado was invented by Adaptec before the

"inventions" claimed in the '972 patent. 35 U.S.C. § 102 (g).

Chaparral's expert, Gary Stephens, testified that Adaptec's Coronado product had all the

hardware and functionality required by the claims of the '972 patent. The trial testimony of Ian

Davies, George Kalwitz and Stan Manzanares, as well as Adaptec documents, establishes that

the Coronado product was invented prior to Crossroads's invention of the subject matter claimed

in the '972 patent. Section 102 (g) permits another's prior invention to invalidate a patent even

though the same art may not qualify as prior art under other subsections of 35 U.S.C. § 102.

*Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1175 (Fed. Cir. 1999). The Coronado product

was both conceived and reduced to practice before the date of invention for the '972 patent. At

trial, Crossroads presented nothing to dispute documents and testimony corroborating the dates

of invention of the Adaptec product, so the Adaptec product is undisputed prior art.

Mr. Stephens testified that the Coronado product met all the limitations of the '972

patent's router claims, including the "access controls" limitation. A claim is anticipated if each

and every element of the claimed invention is found in a single piece of prior art. *Verdegaal*

*Bros., Inc. v. Union Oil Co.*, 814 F.2d 628, 631 (Fed. Cir. 1987).

In addition, the invalidity of the claims of the '972 patent is confirmed by Crossroads'

own infringement position. Crossroads' expert, Dr. Hodges, testified that Chaparral's products

infringe because its products were capable of operating in a mode in which "access controls"

were present. By this same reasoning, however, the '972 patent is invalid as a matter of law. It

is undisputed that the RESERVE command is capable of operating in a mode in which

reservations cannot be canceled by more than one workstation. In fact, during cross-examination in Crossroads' rebuttal case, Dr. Hodges admitted this by testifying that it was possible for the prior art Adaptec Coronado to prohibit all but a single host from eliminating a reservation. *Trial transcript 9/11/01*, lines 09:55:236 - 09:55:3410 (Tab 1). If Crossroads is correct that such functionality infringes the '972 patent when placed in Chaparral's products, the '972 patent is correspondingly invalid as a matter of law because that same function exists in the prior art. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier."); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988) ("[T]he claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.").

Thus, even viewing the evidence most favorably to Crossroads, the Adaptec Coronado product constitutes prior art, and it falls within the scope of the '972 patent claims. Furthermore, there is no evidence that Adaptec abandoned, suppressed, or concealed its invention.

### 2.    The '771 Patent Anticipates Claims 1-4 and 7-14

Chaparral has proven that claims 1-4 and 7-14 of the '972 patent are also invalid as being anticipated by U.S. Patent No. 6,291,771 ("the '771 patent"). Trial Exh. D-104. The '771 patent qualifies as prior art under 35 U.S.C. § 102(e) because it is an issued patent that was filed prior to the invention date of Crossroads.

At trial Crossroads did not prove an invention date prior to August 18, 1997. Crossroads failed to prove a conception date prior to the critical date, and failed to prove it diligently reduced to practice the invention. The Federal Circuit has repeatedly stated, "Conception must be proved by corroborating evidence which shows that the inventor disclosed *to others* his

-5-

'complete thought expressed in such clear terms as to enable those skilled in the art' to make the invention." *Kridl v. McCormick*, 105 F.3d 1446, 1449-50 (Fed. Cir. 1997) (emphasis added); *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985); *see also Data Race, Inc. v. Lucent Techs., Inc.*, 73 F. Supp. 2d 698, 705-706 n.23 (W.D. Tex. 1999) (concluding that documents offered to corroborate inventor testimony regarding conception did not do so because they were not shown to others); *Ganguly v. Sunagawa*, 5 U.S.P.Q.2d 1970 (Bd. Pat. App. Interf. 1987) (finding that document generated by the inventor did not corroborate his testimony regarding conception because no non-inventor testified about the document). Crossroads offered no evidence that was sufficient to prove its conception date, relying solely on evidence from the inventor; furthermore, that evidence does not show *every* feature of the invention claimed in the '972 patent. *Kridl v. McCormick*, 105 F.3d at 1449-50; *see also Coleman v. Dines*, 754 F.2d at 359. Chaparral is not aware of *any* case in which corroboration was found in the *absence* of non-inventor evidence (*i.e.*, in the absence of non-inventor testimony and/or inventor-generated documents).

Also, Crossroads failed to present evidence from which a jury could find it was diligent in reducing to practice the invention from the critical date until December 31, 1997. Instead, Crossroads testified regarding commercial activity surrounding the 4100 product (also known as Verrazano). Crossroads maintained the 4100 product never had access controls, so work on that product is not sufficient to show diligence with respect to the *invention*. *Naber v. Cricchi*, 567 F.2d 382, 384 (C.C.P.A. 1977). Furthermore, the only evidence regarding diligence toward a constructive reduction to practice was inadequate because in this case, it was evidence solely from the inventors, *see Gould v. Schawlow*, 363 F.2d 908, (C.C.P.A. 1966) (finding testimony from inventor's wife to be insufficient), and it is not specific about facts and dates. *Hunter v. Weissbarth*, 230 U.S.P.Q. 365, 368 (Bd. Pat. App. 1986) ("Evidence which is of a general nature

to the effect that work was continuous and which has little specific as to dates and facts does not constitute the kind of evidence required to establish diligence in the critical period."). Thus, Crossroads' cannot establish conception nor that it diligently reduced to practice the invention. The '771 patent qualifies as prior art under § 102 (e).

Mr. Stephens testified that the '771 patent includes each and every element of claims 1-4 and 7-14. Notably , the '771 patent discloses all the hardware of the '972 patent as well as the "mapping" and "access controls" functionality. In particular, the '771 patent discloses and explains "access authorization," which is simply another name for the exact type of "access controls" claimed by Crossroads and defined by the Court.

### 3.    The Prior Art Renders Claims Obvious

#### a.    Adaptec + SCC LUN Mapping Renders the Claims Obvious

Chaparral has proven that all of the claims of the '972 patent are also invalid as obvious over the prior art of Adaptec in combination with prior-art SCC LUN Mapping. Information that is prior art under 35 U.S.C. § 102 can be used to support a rejection under § 103. *Hazeltine Research v. Brenner*, 382 U.S. 252 (1965); *Ex Parte Andersen*, 212 U.S.P.Q. 100, 102 (Bd. Pat. App. & Interf. 1981).

Mr. Stephens testified that combining the hardware and functionality of the Adaptec Coronado product with the "access controls" features of SCC LUN Mapping renders each and every claim of the '972 patent obvious. Simply put, even if the RESERVE management techniques of the Adaptec Coronado product were found not to constitute "access controls,"[3] that

---

[3] Chaparral maintains that RESERVE management meets the definition of "access controls," especially to the extent that RESERVE management shares key characteristics with LUN Zoning, which is accused of infringement. Both RESERVE management and LUN Zoning allow workstation management of access and partial access under certain circumstances. The Federal Circuit has often said that "that which would literally infringe if later in time anticipates if earlier than the invention." *See e.g., Mycogen Plant Science, Inc. v. Monsanto Co.*, 243 F.3d 1316, 1324 (Fed. Cir. 2001); *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744, 747 (Fed. Cir. 1987).

feature of the claims would have been obvious in view of the SCC LUN Mapping standard, which discusses access management techniques that meet the Court's definition for "access controls." Mr. Stephens testified as to why one of skill in the art would have been motivated to make this combination and how the combination invalidates each and every claim.

> **b.   The '771 Patent + Crossroads' Prior Art Renders Claims 5-6 Obvious**

Chaparral has proven that claims 5-6 of the '972 patent are also invalid as being obvious in view of the '771 patent in combination with Crossroads' own prior art — its hardware put in public use at the Comdex 1996 trade show.

Mr. Stephens testified that the '771 patent includes each and every element of claims 1-4 and 7-14.  The '771 patent does not disclose the elements specific to claims 5-6.  However, testimony from Crossroads has established that those elements were included in the Crossroads' public display of technology at its Comdex 1996 technology demonstration.  Mr. Stephens testified about why one of skill in the art would have been motivated to combine the teachings of the '771 patent with the hardware demonstrated by Crossroads at Comdex 1996 to arrive at claims 5-6.  He testified that this combination therefore invalidates those claims.

> **c.   Adaptec + the '771 Patent Renders the Claims Obvious**

Chaparral has proven that all of the claims of the '972 patent are also invalid as obvious over the prior art of Adaptec in combination with the '771 patent.  Mr. Stephens testified that combining the hardware and functionality of the Adaptec Coronado product with the "access controls" features of the '771 patent renders each and every claim of the '972 patent obvious. Simply put, even if the RESERVE management of the Adaptec Coronado product were found not to constitute "access controls," that feature of the claims would have been obvious in view of the "access authorization" teachings included in the '771 patent.  Mr. Stephens testified as to

why one of skill in the art would have been motivated to make this combination and how the combination invalidates each and every claim.

**B.      The '972 Patent Is Unenforceable Because Crossroads Committed Inequitable Conduct**

All the evidence establishes that Crossroads knew of information material to the patentability of the invention claimed in the '972 patent, and that Crossroads failed to disclose this material information to the Patent Office, with the intent to mislead.  No rational jury could find that Crossroads did not commit inequitable conduct to obtain the issuance of the '972 patent.

**1.      Legal Standard for Inequitable Conduct**

Each person that is substantively involved in the prosecution or preparation of a patent application has a duty to disclose to the Patent Office all information known to that individual to be material to patentability.  37 C.F.R. § 1.56(a).  A determination that inequitable conduct occurred during the procurement of the patent may render all claims of the patent unenforceable. *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1182 (Fed. Cir. 1995).

In determining whether inequitable conduct occurred, the Court must first decide whether the information Crossroads withheld from the Patent Office satisfied a threshold level of materiality, and whether Crossroads's conduct satisfies a threshold level of intent to deceive. *Semiconductor Energy Lab Co. v. Samsung Electronics Co.*, 204 F.3d 1368, 1373 (Fed. Cir. 2000).  If these requirements are satisfied, the Court must then balance materiality and intent to determine whether the equities warrant the conclusion that inequitable conduct occurred. *Id.*

Information is material when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent. *Elk Corp. of Dallas v. GAF Building Materials Corp.*, 168 F.3d 28, 31 (Fed. Cir. 1999).  Information may be material even though it may not be sufficient to invalidate the

patent. *Li Second Family Ltd. Partnership v. Toshiba Corp.*, 231 F.3d 1373, 1380 (Fed. Cir. 2000).

Intent to deceive the Patent Office does not need not be proven by direct evidence. *Semiconductor Energy*, 204 F.3d at 1374-1375. Intent to deceive may be inferred from the facts and circumstances surrounding the applicant's conduct. *Id.* at 1375. Intent may be inferred where a patent applicant knew or should have known that withheld information would be material to the Patent Office's consideration of the patent application. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed. Cir. 1997). The more material the omission or the misrepresentation, the lower the level of intent required to establish inequitable conduct. *Semiconductor Energy*, 204 F.3d at 1375.

### 2.   Crossroads Had a Duty to Disclose Information Relating to the Public Use and Offer for Sale of the Crossroads 4100 Prototype

Evidence at trial established that the Crossroads 4100 prototype shown at the Comdex 1996 tradeshow had many, if not all, of the elements required by the '972 patent. In fact, Crossroads considered its 4100 product as embodying the exact invention of the '972 patent, as evidenced by their marking it with the patent label and the testimony of Mr. Middleton. Crossroads' public use of the 4100 prototype at Comdex 96 was prior art under Section 102(b) because it occurred more than one year prior to the filing date of the '972 patent application.

The evidence also demonstrates that Crossroads employees substantively involved in the prosecution and preparation of the '972 patent application knew of the public display at Comdex. Specifically, Brian Smith, Jeffry Russell, and Geoffrey Hoese each knew the 4100 prototype was demonstrated at the Comdex tradeshow. A brochure describing the 4100 product was distributed at Comdex '96, as confirmed by Crossroads' testimony. Jeffry Russell and Geoffrey Hoese are named inventors on the '972 patent application, and therefore each was substantively involved in

the prosecution and preparation of the '972 patent. Mr. Smith also acknowledged that he had a personal duty to disclose to the Patent Office information material to the issue of patentability, as evidenced by his signed statement to the Patent Office confirming this duty.

The testimony of Mr. Stephens indicates that the 4100 prototype displayed at Comdex 1996 was more material than any of the references considered by the Examiner during the prosecution of the '972 patent. This is especially true given that Crossroads itself considered the 4100 product as embodying the invention of the '972 patent. Thus, a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent.

Additionally, there is evidence that Crossroads offered to sell the 4100 product more than one year prior to the filing of the '972 patent. An offer to sell the claimed invention more than one year before the filing date of a patent bars the grant of the patent under section 102(b), so this on-sale information is material to the issue of patentability. The evidence establishes that in 1996, Crossroads offered to provide a 4100 product at a price of $3,000. Furthermore, a Crossroads purchase order log shows that purchase orders were received in 1996 for the 4100 product. However, these offers for sale were not disclosed to the Patent Office.

Despite their duty to disclose all material information relating to patentability, neither Mr. Smith, Mr. Russell nor Mr. Hoese disclosed to the Patent Office any information relating to the 4100 prototype. Given the similarities between the 4100 prototype and the claimed invention, Mr. Smith, Mr. Hoese, and Mr. Russell knew that this information was material to the Patent Office's consideration of the '972 patent application. The materiality of this information is further highlighted by the fact that Crossroads marked its 4100 product as embodying the

invention of the '972 patent. Accordingly, an intent to deceive the Patent Office may be inferred from the withholding of this material public use and on-sale information.

Because the information regarding the 4100 product that was withheld from the Patent Office was material, and because an intent to deceive the Patent Office may be inferred from the conduct of Mr. Russell, Mr. Smith, and Mr. Hoese, a finding of inequitable conduct is warranted, and the '972 patent should be held unenforceable.

3.    **Crossroads Had a Duty to Disclose Information Relating to the Offer for Sale of the Hewlett Packard Mux**

Evidence presented at trial establishes that the Hewlett Packard Mux (re-branded by Crossroads as the CrossPoint 4400) contains many, if not all, of the elements required by the '972 patent.

The evidence also demonstrates that there was an offer to sell the 4400 product more than one year before the filing date of the '972 patent. As Mr. Smith testified, in November 1996 Crossroads was speaking with Hewlett Packard regarding purchasing the Hewlett Packard Mux (HP Mux) as an OEM. Thus, in November 1996, Crossroads and Hewlett Packard were talking about sales of the HP Mux by Hewlett Packard to Crossroads. Furthermore, a Crossroads purchase order log establishes that Crossroads received a purchase order from Compaq for the 4400 product in 1996.

As the testimony shows, the HP Mux contains most of the elements required by the claims of the '972 patent. Furthermore, as the testimony of Mr. Stephens indicates, the HP Mux is more material than any of the references considered by the examiner during the prosecution of the '972 patent. Thus, a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent.

Despite its materiality, no information relating to the HP Mux was disclosed to the Patent Office. As previously indicated, Mr. Smith, Hoese, and Russell had an obligation to disclose material information to the Patent Office—an obligation acknowledged during trial.

However, Mr. Smith and Mr. Hoese failed to disclose to the Patent Office any information relating to the HP Mux. Because the HP Mux was similar to the claimed invention in many ways, and because it was more material than any of the references considered by the examiner, Mr. Smith and Mr. Hoese knew that this information would be material to the Patent Office's consideration of the patent application. Thus, an intent to deceive the Patent Office may be inferred from the withholding of this information.

Because the information regarding the HP Mux that was withheld from the Patent Office was material, and because an intent to deceive the Patent Office may be inferred from the conduct of Mr. Smith and Mr. Hoese, a finding of inequitable conduct is warranted and the patent should be unenforceable.

### 4. Crossroads Had a Duty to Disclose Information Relating to the Adaptec "4200 Look-Alike" Product

During a 1997 visit to Adaptec, Mr. Smith wrote notes indicating an Adaptec bridge product he learned about at the meeting was a Crossroads 4200 product look-alike. Exhibit D-140. Crossroads considered its 4200 product as embodying the invention of the '972 patent, as evidenced by their marking it with the patent label, as confirmed by the testimony of Mr. Middleton. The evidence shows that the 4200 and the 4100 products shared much in common, and the 4100 product was also marked as embodying the '972 invention. For instance, Keith Arroyo testified that much of the code he wrote for the 4100 was used in the other products, including the 4200. Crossroads also recognized the similarities between the 4100 and the 4200 when it marked both the 4100 and 4200 products with the '972 patent number.

Because of the similarity of the 4200 product to the 4100 product, the Adaptec 4200 look-alike product is material to the issue of patentability. The Adaptec product was material prior art. Mr. Smith learned of the Adaptec product in February 1997, which is before the date the Crossroads patent issued.

Mr. Smith therefore had a duty to disclose the Adaptec product to the Patent Office during the prosecution of the '972 patent. Because of the admitted similarities between the Adaptec product and the subject matter claimed in the '972 patent, Mr. Smith knew that the existence of the Adaptec product would have been material to the Patent Office's consideration of the patent application. An intent to deceive the Patent Office may be inferred from the withholding of this highly material information. Therefore, Mr. Smith committed inequitable conduct in failing to disclose the Adaptec product to the Patent Office; no rational jury could find the '972 patent enforceable. This Court is respectfully requested to find the '972 patent unenforceable as a matter of law or order a new trial on the issue.

### C.   No Rational Jury Could Find That Chaparral's Products Infringe Any of the Claims of the '972 Patent Literally or under the Doctrine of Equivalents

No rational jury could find that any of the products made, sold, or offered for sale by Chaparral directly infringe any of the claims of the '972 patent because Crossroads has not presented evidence that each element of the claims of the '972 patent has been met by the accused devices. Additionally, no rational jury could find that Chaparral induced infringement or contributorily infringed any claims of the patent.

There can be no finding of literal infringement of a claim unless the patentee proves by a preponderance of the evidence that every limitation in the asserted claim is literally met by the accused device. *Dolly, Inc. v. Spalding & Evenflo Co.*, 16 F.3d 394, 397 (Fed. Cir. 1994); *Lantech, Inc. v. Keip Mach. Co.*, 32 F.3d 542, 547 (Fed. Cir. 1994). In fact, "the failure to meet

-14-

a single limitation is sufficient to negate infringement of the claim." *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991); *Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998) ("Literal infringement requires that the accused device contain each limitation of the claim exactly; any deviation from the claim precludes a finding of literal infringement.").

If the invention is a method, there is no infringement unless the patentee proves by a preponderance of the evidence that each step of the method is performed. The manufacture and sale of an apparatus cannot directly infringe a method claim. *Mendenhall v. Cedarrapids, Inc.*, 5 F.3d 1557 (Fed. Cir. 1993). Because a dependent claim incorporates all limitations of the claim to which it refers, if a product is not covered by any of the independent claims of a patent, then as a matter of law it is not covered by any other claims in the patent. *See Wolverine World Wide, Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994).[4]

There is no contributory or inducement of infringement unless a showing of direct infringement has been made. Prior to a finding of inducement of infringement or contributory infringement, the patentee must prove that direct infringement of the patent has occurred. *Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1048 (Fed. Cir. 2000); *Serrano v. Tellular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997). To show inducement of infringement, the patentee also must show the accused infringer actively and knowingly aided and abetted another's underlying direct infringement. *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). To show contributory infringement, a patentee also must also show that the alleged infringer knew that the use for which their product was made was both

---

[4] For this reason, arguments will be focused on limitations of the independent claims.

patented and infringing. *Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co.*, 803 F.2d

1170, 1174 (Fed. Cir. 1986).

Although not literally infringed, a claim may be infringed under the doctrine of

equivalents. The accused device or process must have an "equivalent" of each missing claim

element. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

"[A]pplication of the doctrine of equivalents rests on the substantiality of differences between

the claimed and accused products or processes, assessed according to an objective standard."

*Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1518 (Fed. Cir. 1995) *rev'd on*

*other ground by Warner-Jenkinson*, 520 U.S. 17. However, every element or its equivalent must

be present in the accused device; if an element or its equivalent is missing, there can be no

infringement under the doctrine of equivalents. *Warner-Jenkinson Co.*, 520 U.S. at 29.

> **1.    Crossroads Has Presented No Evidence That the Accused Devices "Implement Access Controls" as Required by Claims 1-14**

Crossroads failed to show that Chaparral's products with LUN Zoning have the "access

control" limitation, which is a required element of all of the claims. "JMOL in favor of a party is

properly granted in the context of literal infringement if no reasonable jury could determine that

every limitation recited in the properly construed claim is not . . . found in the accused device."

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 974 (Fed. Cir. 1999).

Crossroads asserts that Chaparral's LUN Zoning feature constitutes "access controls."

However, Crossroads, through its technical expert Dr. Hodges, did not establish that LUN

Zoning qualifies as "access controls" according to this Court's definition. The Court stated that

"access controls" were not present if each individual workstation may manage access in its Order

of May 14, 2001 (page 8). The Court later emphasized this point, stating, "The '972 patent does

not allow multiple workstations to implement the access controls. ... Plaintiff's argument [to the

contrary] is disingenuous, and will not be further entertained." Order of August 27, 2001 at p. 6, n.5. Additionally, the Court stated that "access controls" are not present if workstations are afforded partial access. Order of May 14, 2001, page 7.

At trial, the only Chaparral products accused of infringement were (1) Chaparral's original products with LUN Zoning and (2) Chaparral's modified products with LUN Zoning. Chaparral's original products with LUN Zoning lack access controls because each workstation may manage access using CAPI computer commands. CAPI commands are designed to allow each individual workstation to manage its access. Chaparral's original RAID products with LUN Zoning also allow each workstation to obtain partial access to storage through the use of "pass-through" commands. The pass-through commands allow users to get, for example, diagnostic information from any storage device regardless of LUN Zoning settings.

Although access management and pass-through commands can be disabled in Chaparral's original products with LUN Zoning, individual access management *via* a menu user interface can still take place through an Ethernet connection. Additionally, the default mode of operation for Chaparral's LUN Zoning products is the mode in which each workstation may manage its access and, in Chaparral's RAID products with LUN Zoning, obtain partial access. Even if the CAPI management and pass-through functionality is disabled in the original products with LUN Zoning, at least one mode of operation allows any computer to gain access to any storage it chooses. This is antithetical to "access controls" as defined by the Court because "access controls" are not present if each workstation may manage access. With the default mode of operation being such that each workstation may manage its own access (and gain access to any device), "access controls" (and any corresponding element of security) is absent.

-17-

Chaparral's modified products with LUN Zoning, which do not allow users to disable CAPI management or pass-through commands, also do not infringe. Each individual workstation connected to the modified products with LUN Zoning can <u>always</u> manage their own access, meaning that they can access any storage they want. Each workstation can also <u>always</u> obtain partial access through the use of pass-through commands. These features are in direct contradiction to the meaning of "access controls."

For the original products with LUN Zoning, Crossroads argued that there are two modes of operation — one in which CAPI and pass-through is disabled and the other in which they are enabled. Crossroads argued that the disabled mode infringes, and thus the product infringes. For the modified products, Crossroads argued that individual workstations cannot manage access because CAPI commands and pass-through functionality are not known by every user and/or are overly-difficult to use. If the jury believed Crossroads' argument, that does not change the indisputable fact that both the original and modified product provide that individual workstations may manage access. In fact, with the modified products, there is <u>no</u> mode of operation in which individual workstations are <u>not</u> permitted to manage their own access or achieve partial access. Rather, the only mode of operation is one in which each workstation can manage its access and obtain partial access, in direct contradiction to the meaning of "access controls."

Moreover, during its rebuttal case, Crossroads argued that RESERVE management was not access controls because RESERVE does not really limit access. Dr. Hodges testified that the RESERVE command provides a number of ways in which a reservation may be cancelled. For instance, a host issuing a RESET command could "break in" to storage. For such reasons, Crossroads asserted that RESERVE management was not covered by the invention.

By Crossroads' own reasoning, however, Chaparral's accused products cannot infringe as a matter of law.  Just like the RESERVE command, Chaparral's accused products provide a number of ways in which a reservation may be cancelled.  For instance, one can issue a CAPI command designed specifically to grant a host unlimited access.  In this way, a user can "break in" to storage.  Therefore, for the same reason Crossroads argues its patent does not encompass RESERVE, there can be no infringement as a matter of law.  *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001) ("[I]t is axiomatic that that which would literally infringe if later anticipates if earlier."); *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882 (Fed. Cir. 1988) ("[T]he claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses.").

Because "access controls" is absent from Chaparral's accused products (both the original and modified products), an element of claims 1-14 has not been proven.  The complete absence of an element cannot lead to a finding of infringement even under the doctrine of equivalents.  *Warner-Jenkinson Co.*, 520 U.S. at 29.  No rational jury could therefore find that Chaparral infringed any claim of the '972 patent, and accordingly, this Court is urged to find that Chaparral did not literally infringe or infringe under the doctrine of equivalents the '972 patent as a matter of law, or grant a new trial on the issue.

2.    **Crossroads Has Not Shown Direct Infringement of Claims 7-14 Because There Is No Evidence That Chaparral Made or Sold Workstations or SCSI Storage Devices**

There is no evidence that the devices made and sold by Chaparral directly infringe the storage network system claims (claims 7-10) or the method claims (11-14) that require SCSI storage devices and workstations.  There is no evidence that Chaparral makes or sells workstations or SCSI storage devices in connection with the accused RAID and router products.

Crossroads also has presented no evidence that any parties have connected the accused devices to the storage network required by claims 7-10, or to the Fibre Channel devices required by claims 11-14. Crossroads has only shown that Dr. Hodges hooked up the accused devices. Judgment as a matter of law that none of Chaparral's products directly infringe claims 7-14 is therefore appropriate.

### 3. Crossroads Has Not Shown Contributory or Inducement of Infringement of Claims 1-14

Absent direct infringement, there can be neither contributory infringement nor inducement of infringement. *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684 (Fed. Cir. 1986). Crossroads has failed to present any evidence supporting a finding of active inducement of infringement because Crossroads has presented no evidence that Chaparral knowingly aided and abetted another's direct infringement. Crossroads has also failed to present evidence supporting a finding of contributory infringement because Crossroads has failed to present evidence showing that Chaparral knew that its customers' use of the products was infringing.

### D. No Rational Jury Could Find Chaparral Willfully Infringed the '972 Patent

Crossroads has not provided any proof that Chaparral had no reasonable basis for acting as it did, as is required for a finding of willful infringement. *See Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). "The test is whether, under all the circumstances, a reasonable person would prudently conduct himself with any confidence that the court might hold the patent invalid or not infringed." *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988). The Federal Circuit has stated that the defendant's "intent and reasonable beliefs are the *primary* focus of a willful infringement inquiry." *Ortho Pharm Corp.*, 959 F.2d at 944

(emphasis added).  Crossroads has not provided <u>any</u> evidence concerning Chaparral's intent or beliefs.

Willful infringement must be proven by clear and convincing evidence. *E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1440 (Fed. Cir. 1988).  All Crossroads offers are the conclusory opinions of its hired expert, Mr. Ken Kuffner.  Mr. Kuffner's testimony mostly amounts to the recounting of an incomplete timeline taken out of its proper context, which says nothing about Chaparral's intent and belief.

The only evidence regarding beliefs and intent during Crossroads' case is that from Mr. Jerry Walker.  Mr. Walker testified that he believed the '972 patent to be <u>non-infringed and invalid</u>. *Trial transcript 9/6/01*, lines 10:38:311 - 10:38:516 (Tab 2).  Mr. Walker testified that Chaparral *immediately* discussed the '972 patent with patent counsel, David Zinger, when he became aware of the '972 patent.  There is no dispute that Mr. Zinger was capable and competent and had an electrical and computer background suitable for the task.  Even if Chaparral had *not* gotten an opinion from counsel, "failure to obtain legal advice does not mandate a finding of willfulness or bad faith." *Delta-X v. Baker Hughes Prod. Tools*, 984 F.2d 410, 414 (Fed. Cir. 1993); *Nickson Indus. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) (finding no willfulness even without opinion because court accepted testimony of defendant employee that he thought the patentee's invention was covered by the prior art).

Mr. Zinger provided opinions during the pendency of this action, which Crossroads filed on March 31, 2000.  Chaparral relied upon those opinions, which analyzed both non-infringement and invalidity of the '972 patent.  When Mr. Zinger completed his November 2000 opinion and provided it to Chaparral, Crossroads was accusing products without LUN Zoning of infringement.  Mr. Walker testified that Chaparral introduced LUN Zoning in early 2001, still

-21-

believing that the '972 patent was invalid.  Mr. Zinger also testified that his conclusion of invalidity was unchanged.  It was not until July 6, 2001 (over 15 months since the lawsuit was filed) that Crossroads accused Chaparral's products having LUN Zoning of infringing.

These facts, particularly that Chaparral relied upon a competent opinion of counsel and believed the '972 patent to be invalid and non-infringed, show that there is no legally sufficient evidentiary basis for a rational jury to find, by clear and convincing evidence, that acts of willful infringement have occurred.  Chaparral respectfully urges this Court to enter a finding of no willful infringement as a matter of law or grant a new trial on the issue.

## III.    CONCLUSION

No rational jury would find that the '972 patent is valid or enforceable or that Chaparral infringed or willfully infringed any of the claims of the '972 patent, even if the inferences and facts are viewed most favorably to Crossroads.  Accordingly, Chaparral respectfully requests that its Motion be granted under either Rule 50(b) or Rule 59.  Proposed Orders are attached.

26 September 2001                                    Respectfully Submitted,

By _Michael C. Barrett_____
David D. Bahler, Esq. (SBN 01513100)
Stephen D. Dellett, Esq. (SBN 05652490)
Michael C. Barrett, Esq. (SBN 24006803)
Mark T. Garrett, Esq. (SBN 24007225)
FULBRIGHT & JAWORSKI, L.L.P.
600 Congress Avenue, Suite 2400
Austin, TX 78701-3248
Telephone: (512) 474-5201
Facsimile: (512) 536-4598

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2001, I caused copies of the foregoing **CHAPARRAL'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR NEW TRIAL UNDER RULES 50(b) AND 59** to be served on all counsel of record, as indicated below:

Alan D Albright, Esq.                                  **VIA HAND DELIVERY & E-MAIL**
GRAY CARY WARE
& FREIDENRICH, L.L.P.
1221 South MoPac Expressway, Suite 400
Austin, Texas 78746-6875


John Allcock, Esq.                                     **VIA FEDERAL EXPRESS & E-MAIL**
John Giust, Esq.
GRAY CARY WARE
& FREIDENRICH, L.L.P.
401 B Street, Suite 1700
San Diego, CA 92101-1048


Marc Pickett

9/11/01

1

1

2   REALTIME UNEDITED TRANSCRIPT DISCLAIMER IN THE MATTER OF

3   CIVIL ACTION NO. A 00-CA-217 SS
    CROSSROADS SYSTEMS, (TEXAS), INC., A TEXAS CORPORATION
4
    VS.
5
    CHAPARRAL NETWORK STORAGE, INC., A DELAWARE CORPORATION
6
    The following transcript(s) of proceedings, or any portion
7   thereof, in the above-entitled matter, taken on any date, is
    being delivered UNEDITED and UNCERTIFIED by the Official Court
8   Reporter at the request of PLAINTIFF AND DEFENDANT.

9   The purchaser agrees not to disclose this realtime unedited
    transcript in any form (written or electronic) to anyone who
10  has no connection to this case.  This is an unofficial
    transcript which should NOT be relied upon for purposes of
11  verbatim citation of testimony.

12  This transcript has not been checked, proofread or corrected.
    It is a draft transcript, NOT a certified transcript.  As
13  such, it may contain computer-generated mistranslations of
    stenotype code or electronic transmission errors, resulting in
14  inaccurate or nonsensical word combinations, or untranslated
    stenotype symbols which cannot be deciphered by
15  non-stenotypists.  Corrections will be made in the preparation
    of the certified transcript, resulting in differences in
16  content, page and line numbers, punctuation, and formatting.

17  This realtime unedited transcript contains no appearance page,
    certificate page, index, or certification.
18

19

    _____        _____
20  Signature of Purchaser          Date

21

    _____        _____
22  Signature of Official Reporter       Date
08:34:28
23

24

25

36

09:34:50 1  the 972 patent for the reasons stated above.

09:34:50 2      THE COURT:  All right.  I'll have counsel up here,

09:34:50 3  please.

09:34:54 4      (At the Bench, on the record.)

09:35:06 5      THE COURT:  Does defendant rest?

09:35:07 6      MR. BAHLER:  Yes, your Honor.

09:35:08 7      THE COURT:  Does defendant renew its motions?

09:35:10 8      MR. BAHLER:  Yes, your Honor, it does.

09:35:13 9      THE COURT:  The motions are overruled.  Plaintiff wish

09:35:17 10  to renew their motion?

09:35:18 11      MR. ALLCOCK:  Yes.

09:35:19 12      THE COURT:  Your motion is overruled with the

09:35:21 13  exception of indefiniteness.  There's no evidence of

09:35:23 14  indefiniteness which will be submitted to the jury.

09:35:27 15      MR. ALLCOCK:  Thank you, your Honor.

09:35:38 16      THE COURT:  You may proceed.

09:35:39 17      MR. ALLCOCK:  Yes, your Honor.  We would recall to the

09:35:41 18  stand Dr. Hodges.

09:36:07 19      THE COURT:  You're still under oath, sir.

09:36:09 20      THE WITNESS:  Yes, sir.

09:36:10 21          RE-DIRECT EXAMINATION

      22  BY MR. ALLCOCK:

09:36:12 23  Q.  Morning, Dr. Hodges.  I'm going to ask you about some of

09:36:14 24  the prior art we talked about yesterday.  Let me start off by

09:36:18 25  asking you about Exhibit 602.  This is this LUN mapping mode


                LILY I. REZNIK

50

09:55:14 1   difference.  I can't program it to prohibit those functions.

09:55:17 2   Q.  You can eliminate the programming that causes those

09:55:19 3   functions, right?

09:55:20 4   A.  I do not have to put the programming in to cause those

09:55:22 5   functions.

09:55:23 6   Q.  All right, sir.  In that case, a system using the Adaptec

09:55:26 7   Coronado SCSI reserve could have a number of hosts, all but

09:55:30 8   one are programmed to prohibit doing any of the stuff that

09:55:32 9   would eliminate reserve, right?

09:55:34 10  A.  That would be possible.

09:55:36 11  Q.  And that wouldn't -- and that would be access controls,

09:55:39 12  right?

09:55:40 13  A.  That would be access -- well, I'm not sure it would be

09:55:42 14  access control.  I think you'd have to look at the specifics,

09:55:46 15  but this is definitely not the way that the SCSI standard

09:55:55 16  presents reserve and it does not -- is not presented as a

09:55:58 17  method of doing this.

09:55:59 18       If you read the paragraph about two or three

09:56:02 19  paragraphs above the one you have highlighted, it says that

09:56:06 20  it's a way from coordinating the operations between multiple

09:56:10 21  hosts that want to share storage and --

09:56:14 22  Q.  All right, Dr. Hodges.  We don't have much time.  I'm

09:56:16 23  sorry for interrupting.  The question was the prior art is

09:56:29 24  capable of being programmed the way I described it, right?

09:56:29 25  A.  With invention.


LILY I. REZNIK

1



1

2   REALTIME UNEDITED TRANSCRIPT DISCLAIMER IN THE MATTER OF

3   CIVIL ACTION NO. A 00-CA-217 SS
    CROSSROADS SYSTEMS, (TEXAS), INC., A TEXAS CORPORATION
4
    VS.
5
    CHAPARRAL NETWORK STORAGE, INC., A DELAWARE CORPORATION
6
    The following transcript(s) of proceedings, or any portion
7   thereof, in the above-entitled matter, taken on any date, is
    being delivered UNEDITED and UNCERTIFIED by the Official Court
8   Reporter at the request of PLAINTIFF AND DEFENDANT.

9   The purchaser agrees not to disclose this realtime unedited
    transcript in any form (written or electronic) to anyone who
10  has no connection to this case.  This is an unofficial
    transcript which should NOT be relied upon for purposes of
11  verbatim citation of testimony.

12  This transcript has not been checked, proofread or corrected.
    It is a draft transcript, NOT a certified transcript.  As
13  such, it may contain computer-generated mistranslations of
    stenotype code or electronic transmission errors, resulting in
14  inaccurate or nonsensical word combinations, or untranslated
    stenotype symbols which cannot be deciphered by
15  non-stenotypists.  Corrections will be made in the preparation
    of the certified transcript, resulting in differences in
16  content, page and line numbers, punctuation, and formatting.

17  This realtime unedited transcript contains no appearance page,
    certificate page, index, or certification.
18

19

20  Signature of Purchaser            Date

21

22  Signature of Official Reporter    Date

23
08:41:47
    24

    25

25070791.1

10:24:25 1  enough.

10:25:08 2       (Jury present.)

10:25:11 3       THE COURT:  You may sit down in the courtroom and you

10:25:13 4  may call your next witness.

10:25:14 5       MR. ALLCOCK:  Yes, your Honor.  We would recall Mr.

10:25:16 6  Walker to the stand.

10:25:18 7       THE COURT:  Mr. Walker, come forward, and you're still

10:25:20 8  under oath, sir.

10:25:21 9       THE WITNESS:  Yes, sir.

10:25:27 10          RE-DIRECT EXAMINATION

10:25:30 11  BY MR. ALLCOCK:

10:25:36 12  Q.  From June until now, Chaparral has continued to sell

10:25:41 13  products including the LUN zoning feature; is that right, sir?

10:25:45 14  A.  That's correct.

10:25:46 15  Q.  And you heard yesterday Mr. Gluck's testimony on video

10:25:52 16  that he talked with a Mr. Rahmani from a company called

10:25:56 17  Pathlight, and that they agreed that the patent was invalid.

10:26:00 18  Did you hear that testimony?

10:26:02 19  A.  I heard that testimony, yes.

10:26:04 20  Q.  And I'm placing before you -- let me show you a page 408

10:26:19 21  one and the of exhibit 39 that I don't have the bar coded

10:26:26 22  version of it handy.  Is that a page of your lab notebook

10:26:33 23  indicating that you talked to Mr. Levy, the patent lawyer for

10:26:37 24  Pathlight?

10:26:39 25  A.  No, it is not.  It's a page indicating that Mr. Zinger had

10:38:31 1    Q. Mr. Walker, as you sit here today, do you believe the 972

10:38:37 2    patent is valid?

10:38:38 3    A. No.

10:38:38 4    Q. As you sit here today, do you believe that any product

10:38:40 5    ever made by Chaparral infringes the 972 patent?

10:38:51 6    A. No.

10:38:51 7    Q. Pass the witness, your Honor.

10:38:51 8         THE COURT: Any further questions?

10:38:51 9         MR. ALLCOCK: No further questions of the witness,

10:38:51 10   your Honor.

10:38:51 11        THE COURT: You may step down, sir. You may call your

10:38:53 12   next witness.

10:38:54 13        MR. ALLCOCK: I will call Dr. Paul Hodges.

10:39:04 14        THE COURT: Be sworn, please.

10:39:06 15        (Witness was sworn.)

10:39:14 16        THE COURT: Take your seat, please, sir. Tell us your

10:39:23 17   full name, please, sir, and spell your last.

10:39:26 18        THE WITNESS: Paul Hodges, H-O-D-G-E-S.

10:39:29 19             DIRECT EXAMINATION

10:39:31 20   BY MR. ALLCOCK:

10:39:32 21   Q. Dr. Hodges, could you tell the ladies and gentlemen of the

10:39:35 22   jury your work background?

10:39:37 23   A. Yes. I worked for IBM for 39 years. The last 33 of those

10:39:44 24   years, I was working in storage architecture -- there are

10:39:48 25   various areas of storage -- primarily storage architecture.